127 Wn.2d 141 (1995)
896 P.2d 1254
THE STATE OF WASHINGTON, Petitioner,
v.
ANGELA DEBORAH FREITAG, Respondent.
No. 62004-1.
The Supreme Court of Washington, En Banc.
June 22, 1995.
As amended by order November 14, 1995.
*143 Norm Maleng, Prosecuting Attorney, and Donna L. Wise, Senior Appellate Attorney, for petitioner.
Carney Badley Smith & Spellman P.S., by James E. Lobsenz and Barbara J. Van Ess, for respondent.
[As amended by order of the Supreme Court November 14, 1995.]
PER CURIAM:
Following Angela Freitag's plea of guilty to a charge of vehicular assault while driving under the influence of alcohol, the trial court imposed an exceptional sentence below the standard sentencing range. The trial court attributed the sentence to Freitag's lack of criminal history, her concern for people beyond that normally shown by others, and a desire to utilize community service in lieu of jail overcrowding. The Court of Appeals affirmed and held that Freitag's "complete lack of any police contacts whatsoever" justified a departure downward from the standard sentencing range. State v. Freitag, 74 Wn. App. 133, 140-41, 873 P.2d 548 (1994).
We granted the State's petition for review and considered the matter without oral argument pursuant to RAP 11.6. We reverse the Court of Appeals, and remand to the trial court for resentencing.
The facts are undisputed. On August 14, 1991, at approximately 3 a.m., Freitag drove through a red light and broadsided a car driven by Quoc Cuong Ly. As a result of the collision, Ly suffered a broken neck. Freitag, who was not injured, refused to take any sobriety tests at the scene. She was placed under arrest and a blood sample was taken from her at Swedish Hospital, indicating a blood alcohol content of .16.
[1] Since Freitag had no criminal history, the standard sentencing range was three to nine months of confinement. Nevertheless, the trial court imposed an exceptional sentence converting the 90-day minimum confinement period to 712 hours of community service.[1] To impose an *144 exceptional sentence for vehicular assault, the Legislature requires "substantial and compelling reasons".[2] RCW 9.94A.120(2). Review of the trial court's justifications for departing from the standard sentencing range is de novo as a matter of law. State v. Johnson, 124 Wn.2d 57, 65-66, 873 P.2d 514 (1994). We examine each of the trial court's reasons for imposing an exceptional sentence in turn.
[2] Freitag never had any contact with the police prior to the charge of vehicular assault. The Court of Appeals, in part, justified the trial court's departure from the standard sentencing range on this basis. Nevertheless, we consistently have held that lack of criminal history is an insufficient ground for sentencing below the standard range since the Legislature specifically considered criminal history when establishing standard sentencing ranges. "Because criminal history is one of the components used to compute the presumptive range for an offense, it may not be used as a mitigating factor." State v. Rogers, 112 Wn.2d 180, 183, 770 P.2d 180 (1989) (citing State v. Pascal, 108 Wn.2d 125, 137, 736 P.2d 1065 (1987)).
[3, 4] While we recognize the harshness of a rule that precludes the trial court from considering a defendant's altruistic past during the sentencing phase, the Sentencing Reform Act of 1981 requires this result. See RCW 9.94A.340. Although sentencing within the standard range may at times appear unnecessary or even unjustified, it is the function of the judiciary to impose sentences consistent with legislative enactments. As we have recognized previously,
[d]etermination of crimes and punishment has traditionally been a legislative prerogative, subject to only very limited review in the courts. A belief on the part of the judiciary that sentencing possibilities are inadequate goes to the wisdom of *145 the dispositional standards and cannot be enough to overcome the legislatively prescribed range of punishment.
(Citations omitted.) State v. Bryan, 93 Wn.2d 177, 181, 606 P.2d 1228 (1980). The trial court's reliance on Freitag's concern for others when determining her sentence was an abuse of discretion. See RCW 9.94A.340.
[5] Finally, the trial court's desire for Freitag to improve herself through community service while limiting prison overcrowding does not justify departure from the standard sentencing range since the Legislature already considered these purposes when establishing the presumptive sentencing ranges. RCW 9.94A.010(5), (6). See Pascal, at 137. While the trial court may feel frustrated in having to impose a sentence within the sentencing guidelines, the Legislature has exercised its prerogative. State v. Bryan, supra.
[6] Freitag argues that resentencing would constitute double jeopardy. However, we have held that resentencing to correct an erroneously imposed lenient sentence does not violate the protection against double jeopardy. Pascal, at 133-35.[3]
We find each of the trial court's justifications for sentencing below the minimum insufficient. Accordingly, we reverse the Court of Appeals, and remand to the trial court for resentencing. MADSEN, J. (dissenting)
The majority's handwringing over being boxed into its result by the Sentencing Reform Act of 1981 (SRA) inspires my dissent. It is a majority of this court, not the SRA, that has closed the door on the exercise of trial court discretion. It is this court which has consistently disregarded personal factors justifying departures downward despite the SRA's clear intent to the contrary, and it is this court which has, in contrast, broadly construed the SRA to ardently uphold innumerable contortions used to justify departures upward. See *146 John M. Junker, Guidelines Sentencing: The Washington Experience, 25 U.C. Davis L. Rev. 715, 742-49 (1992).
A study of this court's departure cases bears this out. Citing the discretion left to judges under the SRA as its justification, this court has scrupulously developed common law regarding reasons for departures upward and has sustained a host of aggravating circumstances. See, e.g., State v. Ritchie, 126 Wn.2d 388, 894 P.2d 1308 (1995) (deliberate cruelty, multiple injuries, victim's vulnerability, abuse of a position of trust, and an ongoing pattern of abuse); State v. Stewart, 125 Wn.2d 893, 897-99, 890 P.2d 457 (1995) (clearly too lenient); State v. Johnson, 124 Wn.2d 57, 67, 75-76, 873 P.2d 514 (1994) (gang motivation and community impact); State v. Smith, 123 Wn.2d 51, 57, 864 P.2d 1371 (1993) (victim's presence during burglary); State v. Solberg, 122 Wn.2d 688, 707-08, 861 P.2d 460 (1993) (quantity of drug and degree of sophistication greater than usual); State v. Valdobinos, 122 Wn.2d 270, 286-87, 858 P.2d 199 (1993) (same); In re Farmer, 119 Wn.2d 597, 599, 835 P.2d 219 (1992) (per curiam) ("especially culpable mental state"); State v. Chadderton, 119 Wn.2d 390, 398, 832 P.2d 481 (1992) (reckless abuse of a position of trust regardless of whether used to commit crime); State v. Post, 118 Wn.2d 596, 614, 826 P.2d 172, modified, 837 P.2d 599 (1992) (future dangerousness for sex offender); State v. Grewe, 117 Wn.2d 211, 216-18, 813 P.2d 1238 (1991) (abuse of trust); State v. Batista, 116 Wn.2d 777, 785-86, 808 P.2d 1141 (1991) (clearly too lenient); State v. Farmer, 116 Wn.2d 414, 431, 805 P.2d 200, 13 A.L.R.5th 1070, corrected, 812 P.2d 858 (1991) (knowing exposure to AIDS virus); State v. Crane, 116 Wn.2d 315, 334, 804 P.2d 10 (unusual number and severity of injuries), cert. denied, 501 U.S. 1237 (1991); State v. Stephens, 116 Wn.2d 238, 242-45, 803 P.2d 319 (1991) (multiple current offenses); State v. Pryor, 115 Wn.2d 445, 454, 799 P.2d 244 (1990) (future dangerousness); State v. Handley, 115 Wn.2d 275, 284-85, 796 P.2d 1266 (1990) (lack of intent to injure does not prevent use of the aggravator of vulnerability and the absence of the defendant when *147 crime was committed does not prevent use of the aggravator of abuse of trust); State v. Dunaway, 109 Wn.2d 207, 218-20, 743 P.2d 1237 (1987), corrected, 749 P.2d 160 (1988) (sophistication and multiple injuries); State v. McAlpin, 108 Wn.2d 458, 463-65, 740 P.2d 824 (1987) (prior felony convictions before the age of 15); State v. Fisher, 108 Wn.2d 419, 424-25, 739 P.2d 683 (1987) (extreme youth and particular vulnerability of individual victim); State v. Armstrong, 106 Wn.2d 547, 550, 723 P.2d 1111 (1986) (vulnerability of victim and multiple incidents); State v. Nordby, 106 Wn.2d 514, 519, 723 P.2d 1117 (1986) (defendant's especially culpable mental state); see also State v. Perez, 69 Wn. App. 133, 138, 847 P.2d 532 (conduct "more egregious than typical"), review denied, 122 Wn.2d 1015 (1993); State v. Creekmore, 55 Wn. App. 852, 861-63, 783 P.2d 1068 (1989) (defendant's lack of remorse), review denied, 114 Wn.2d 1020 (1990); State v. Weaver, 46 Wn. App. 35, 43, 729 P.2d 64 (1986) (particular offense "more onerous than that contemplated by the Legislature"), review denied, 107 Wn.2d 1031 (1987); but see State v. Hammond, 121 Wn.2d 787, 794, 854 P.2d 637 (1993) (absconding of defendant not a justified aggravator); In re Vandervlugt, 120 Wn.2d 427, 434, 842 P.2d 950 (1992) (rejecting future dangerousness as an aggravating factor for nonsexual offense); State v. Barnes, 117 Wn.2d 701, 711-12, 818 P.2d 1088 (1991) (same).
Yet, when examining departures downward, this court has not undertaken its duty to create common law with the same vigor, nor has it respected the discretion of trial judges to the same degree. It has only allowed departures for very few mitigating factors. See, e.g., State v. Alexander, 125 Wn.2d 717, 730, 888 P.2d 1169 (1995) (rejecting peripheral participation in drug hierarchy as a mitigating factor); State v. Gaines, 122 Wn.2d 502, 512, 859 P.2d 36 (1993) (rejecting drug addiction coupled with direct causal connection of addiction to crime as a mitigating factor); State v. Hutsell, 120 Wn.2d 913, 919-21, 845 P.2d 1325 (1993) (rejecting drug addiction as a mitigating circumstance); State v. Allert, 117 Wn.2d 156, 164, 169, 815 P.2d *148 752 (1991) (rejecting alcoholism and absence of future dangerousness as mitigating circumstances); State v. Estrella, 115 Wn.2d 350, 353, 359-60, 798 P.2d 289 (1990) (rejecting rehabilitation potential and low risk to reoffend as mitigating circumstances); State v. Pennington, 112 Wn.2d 606, 610-11, 772 P.2d 1009 (1989) (rejecting a drug or alcohol problem as a mitigating circumstance); State v. Rogers, 112 Wn.2d 180, 183-85, 770 P.2d 180 (1989) (rejecting no prior criminal history, emotional and psychological stress, and impaired capacity as mitigating circumstances); Armstrong, 106 Wn.2d at 551 (rejecting criminal history and lack of aggravating circumstances such as premeditation and deliberate cruelty). In sharp contrast to its findings regarding nonstatutory aggravating factors, this court has rarely found mitigators to be justified unless statutorily provided. See Alexander, 125 Wn.2d at 726-30 (approving extraordinary small amount of controlled substance and low level of sophistication as mitigators); State v. Nelson, 108 Wn.2d 491, 496-501, 740 P.2d 835 (1987) (upholding departure downward for mitigators of incomplete defense of entrapment, cooperation and assistance to the State, and that he played a secondary role in the crime); State v. Pascal, 108 Wn.2d 125, 136, 736 P.2d 1065 (1987) (upholding departure for victim being the initiator, duress, and battered woman syndrome).
One is left with the nagging question of why upward departures are any different than those downward. The Legislature provided for mitigators and departures downward, yet this court consistently finds neither to be justified, effectively depriving trial courts of the discretion downward the Legislature intended. See RCW 9.94A.120; RCW 9.94A.390. Moreover, in designing the standard sentencing ranges, the Legislature intended merely to account for the "typical" crime. Wash. Sentencing Guidelines Comm'n, Implementation Manual at I-36, -37 (1994); Wash. Sentencing Guidelines Comm'n, Report to the Legislature 18 (Jan. 1983). Implicit in this reasoning is the fact that some crimes would be less serious than typical and some more serious. Therefore, departing downward is just as *149 justified as departing upward. See, e.g., ABA Standards for Criminal Justice: Sentencing, std. 18-2.6, at 34-36 (3d ed. 1994) (recognizing that personal characteristics of an offender which are not material to culpability may justify a lesser sanction); std. 18-3.2, at 45-49 (recognizing factors which may mitigate the gravity of the offense or culpability of the offender).
If this court continues to find personal factors distinguishing the defendant to be unacceptable, there is little left open that will ever justify a departure downward. Here, the trial court, after viewing the defendant's history and demeanor and the facts of the case, determined that a downward exceptional sentence was justified based on Freitag's complete lack of any criminal history and police contacts (beyond that counted by the SRA), her contributions to society, her ability to better herself through community service, and her lack of a threat to reoffend. All of these are legitimate considerations under the SRA and therefore justify a departure downward. The Court of Appeals, in affirming the trial court, properly recognized that lack of criminal history does tend to show lack of a predisposition to commit the crime and is the logical corollary to this court's cases which have allowed departures upward for uncounted offenses. State v. Freitag, 74 Wn. App. 133, 140-45, 873 P.2d 548 (1994). In reexamining and recharacterizing these factors, this court has commandeered the discretion away from the trial court.
To justify its results, this court continues to focus on punishment as the primary purpose of the SRA. Estrella, 115 Wn.2d at 357; Pennington, 112 Wn.2d at 611; State v. Rice, 98 Wn.2d 384, 393, 655 P.2d 1145 (1982). In contrast, the Legislature cited six different goals and did not preference any of these higher than the others. These goals are (1) ensuring proportionality of punishment to the seriousness of the offense and the offender's criminal history, (2) just punishment, (3) ensuring punishment is commensurate with that imposed on others committing similar offenses, (4) protecting the public, (5) offering the offender *150 an opportunity to improve him or herself, and (6) making frugal use of the State's resources. RCW 9.94A.010. While punishment is indeed a goal, the Legislature clearly intended that each of these be equally important since it did not rank its goals in level of importance. This court has lost track of the balance the SRA was intended to create and, in so doing, has eliminated the discretion that was to be left to trial judges who sentence downward as well as upward. To date, this court has not provided a sound reason for why trial courts' discretion downward should be any less than that upward, but its precedent implies this is so. Because its implication flies in the face of the SRA, I cannot concur in such an unsound result.
JOHNSON, J., and UTTER, J. Pro Tem., concur with Madsen, J.
[Reporter's Note: Utter, J. Pro Tem., participated in the original opinion filed June 22, 1995. Pekelis, J., participated in the amendment to the opinion filed November 14, 1995.]
Reconsideration granted September 8, 1995; opinion modified November 14, 1995.
NOTES
[1] While 30 days of jail time may be converted to community service for nonviolent offenses under the sentencing guidelines, vehicular assault is defined as a violent offense. RCW 9.94A.380; RCW 9.94A.030(36)(a).
[2] The sentencing guidelines provide that an exceptional sentence may be imposed for some first-time offenders. RCW 9.940A.120(5). Nevertheless, the Legislature specifically excluded violent offenses, which include vehicular assault, from the first-time offender option. RCW 9.94A.030(20)(a)(i); RCW 9.94A.030(36)(a).
[3] Freitag also claims that resentencing would violate due process; in the altenative, she maintains that the doctrine of equitable estoppel bars resentencing. The State immediately appealed the trial court's erroneous sentence, putting Freitag on notice that her sentence was not final. Thus, we find these arguments without merit.